UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.S.,<br>        Plaintiff,<br>    v.<br>FRANK BISIGNANO,[1]<br>Commissioner of Social Security<br>        Defendant. | Case No. 24-cv-07195-SVK<br><br>**ORDER AFFIRMING COMISSIONER'S DECISION**<br>Re: Dkt. No. 11 |

Plaintiff appeals the decision of Defendant Commissioner of Social Security, which denied her application for disability insurance benefits. For the reasons below, the Court **AFFIRMS** the decision of the Commissioner.

**I.     BACKGROUND**

On April 26, 2021, Karen Yvette Sanders ("Plaintiff") filed a claim for Supplemental Social Security income for disability benefits. *See* Dkt. 8-6 (Administrative Record ("AR")) 208-11. On August 20, 2021, Plaintiff's initial claim was denied. AR 82. Plaintiff's claim was again denied on reconsideration on May 12, 2022. AR 104. On March 6, 2023, an Administrative Law Judge ("ALJ") held a telephonic hearing. AR 43-65. On April 3, 2023, the ALJ found Plaintiff was not disabled and issued an unfavorable decision. AR 22-42. (the "ALJ Decision").

As relevant here, in applying the sequential evaluation process for determining disability, at step two, the ALJ found that Plaintiff had the following severe impairments: lumbar

---

[1] The Court takes notice of the fact that, on January 20, 2025, Michelle King became the Acting Commissioner of Social Security, who served until February 16, 2025. This was followed by Leland Dudek, who served until May 7, 2025, when Frank Bisignano was confirmed as the Commissioner of Social Security. *See* https://www.ssa.gov/history/commissioners.html. Accordingly, Frank Bisignano is substituted as the Defendant pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. § 408(g).

degenerative disc disease, cervical degenerative disc disease, left knee mild degenerative joint disease, right ankle mild degenerative joint disease, obesity and depression. AR 28. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR 28-30. Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work with certain limitations. AR 30-35. At step five, the ALJ found that when considering Plaintiff's age, education, work experience and RFC, there are jobs in the national economy existing in significant numbers that Plaintiff could work including: café attendant, garment sorter and price marker. AR 36-37. The ALJ thus concluded that Plaintiff was not under a disability, as defined by the Social Security Act, from April 26, 2021, through the date of the ALJ decision. AR 37.

On January 3, 2024, the Appeals Council denied Plaintiff's request for review of the ALJ Decision. AR 9-14. After the Appeals Council granted Plaintiff's request for an extension to file a civil action, Plaintiff timely filed this action in this District seeking review of the ALJ Decision. AR 1-4; Dkt. 1. The Parties have consented to magistrate judge jurisdiction. Dkts. 6, 7. In accordance with the Federal Rules of Civil Procedure Supplemental Rules for Social Security Actions, the Parties have presented the action for decision on the briefs. Dkt. 11; Dkt. 13; *see* Fed. R. Civ. P. Supp. SS Rule 5. The Court now decides the action without oral argument.

II.     **ISSUES FOR REVIEW**

1. Did the ALJ properly address the medical opinion evidence of:
   a. The psychological consultative examiner, Dr. Alex Crockett, Psy.D.?
   b. The physical consultative examiner, Dr. Rose Lewis, M.D.?
2. Was the ALJ's RFC determination supported by substantial evidence?
3. Did the ALJ appropriately determine at step five that plaintiff was able to perform a significant number of jobs in the national economy?

////

////

////

////

### III. LEGAL STANDARD

Under 42 U.S.C. § 405(g), a district court reviews the Commissioner's decision denying benefits to "determine whether it is free from legal error and supported by substantial evidence in the record as a whole." *Precious A. J. v. Kijakazi*, No. 21-cv-00242 KS, 2022 WL 22894110, at *2 (C.D. Cal. Aug. 1, 2022) (citing *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). For the "substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id.*

Even if an ALJ commits legal error, the Court will uphold the ALJ's decision if the error is harmless. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is "constrained to review to the reasons the ALJ asserts." *Id.*

### IV. DISCUSSION

#### A. Issue One: The ALJ Properly Addressed the Medical Opinion Evidence

Plaintiff argues that the ALJ failed to properly account for the medical opinions of psychological consultative examiner Dr. Alex Crockett, Psy.D. and physical consultative examiner Dr. Rose Lewis, M.D. Dkt. 11 at 17, 23. Current regulations require that "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). An ALJ must explain "how persuasive he or she finds all of the medical opinions … and

3

explain how he or she considered the supportability and consistency factors in each of these findings." *Id.* (quoting 20 C.F.R. § 404.1520c (cleaned up)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant ... objective medical evidence." *Id.* at 792-93 (same). "Consistency means the extent to which a medical opinion is consistent ... with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (same). An ALJ must explain supportability and consistency and "may, but is not required to, explain how other factors" were considered. *C.B. v. O'Malley*, No. 22-cv-05579-LJC, 2024 WL 1329920, at *7 (N.D. Cal. Mar. 27, 2024) (citing 20 C.F.R. § 404.1520c(b)(2)(c)).

### 1. The ALJ Properly Addressed Dr. Crockett's Opinion

Plaintiff contends the ALJ improperly found parts of Dr. Crockett's opinion unpersuasive, by conducting a "cherry picked" analysis. Dkt. 11 at 17-22. The Commissioner argues the ALJ reasonably found Dr. Crockett's opinion of Plaintiff's mental condition unpersuasive-in-part due to Dr. Crockett's exam lacking supportability and consistency with the overall record. Dkt. 13 at 5-8.

Dr. Crockett opined that Plaintiff has marked limitations in both the "ability to adapt to the usual stresses common to a competitive work environment including completing a normal workday or workweek" and the "ability to complete a normal workday or workweek without interruptions resulting from a psychiatric condition[.]" AR 531. The ALJ found that these limitations, along with moderate limitations in "attention and persistence," were supported by the findings of the observations of the exam and represented a persuasive opinion. AR 35.

However, the ALJ found Dr. Crockett's opinion reporting Plaintiff's limitations in social and adaptive functioning was "less persuasive." AR 35. The ALJ reasoned that the reported anxiety symptoms underlying the limitations were not supported by Dr. Crockett's own examination where Plaintiff presented as "[f]riendly and sad overall" but "able to establish rapport." AR 35; AR 531. The ALJ noted that while Plaintiff complained of "anxiety lately," there was no indication of long-term anxiety or an anxiety disorder diagnosis. AR 35. The ALJ found Dr. Crockett's reference to "avoidance, vegetative symptoms," to be speculative due to a lack of "other psychological evidence and no documentation of any avoidance or vegetative

4

symptoms present" in the examination.  *Id.*  Regarding consistency, the ALJ explained that Plaintiff's record "shows absolutely no mental health treatment" and "Dr. Pierce, who has provided [Plaintiff] the majority of her care, has not regularly treated the [Plaintiff] for any mental impairment."  AR 33.

Plaintiff further argues the ALJ's reasoning to discount Dr. Crockett's opinion is "legally insufficient and frustrates meaningful review" and that the ALJ "cherry picked" the record by failing to address portions of Dr. Crockett's exam and the acupuncture clinic records.  Dkt. 11 at 19, 21-22.  To the contrary, the ALJ did adequately address Dr. Crockett's exam.  AR 33, 35 (acknowledging a "tearful mood" during the examination and explaining that this was "reasonably consistent [with] the reported mood symptoms of depression," but that Plaintiff nonetheless "was friendly with [Dr. Crockett] and was overall able to establish good rapport," thereby undermining claims of "anxiety symptoms due to social interactions.").  The ALJ similarly addressed Plaintiff's history of acupuncture treatments in conjunction with other pain treatment methods.  AR 31-32.  While Plaintiff argues that the chronic pain evidenced by her history may be linked to depression, (Dkt. 11 at 22), depression is precisely the portion of Dr. Crockett's opinion that the ALJ found persuasive.  AR 35.  The ALJ's discounting of Dr. Crockett's *anxiety* opinion was well-supported, even in view of Plaintiff's acupuncture treatments, where the ALJ considered Plaintiff's "longitudinal record" and relied on Plaintiff's good rapport during medical appointments to reach the conclusion as to mental limitations.  *Id.*; *See, e.g.*, *Lauri F. v. Comm'r, Soc. Sec. Admin.*, No. 20-cv-01929-MC, 2022 WL 2981450, at *4 (D. Or. July 28, 2022) (ALJ did not err when relying in part on plaintiffs' ability to communicate at "appointments with good rapport, to determine that Plaintiff's mental functioning limitations are not as severe as indicated….").  Accordingly, the ALJ adequately addressed the record and relied on substantial evidence in affording less weight to Dr. Crockett's opinion.

////

////

////

////

### 2. The ALJ Properly Addressed Dr. Lewis' opinion

Regarding the physical consultative exam of Dr. Lewis, the ALJ did not find the opinion persuasive. AR 34. Plaintiff contends the ALJ erred in his treatment of Dr. Lewis' opinion by "fail[ing] to consider that [Plaintiff's] cane was deemed medically necessary by Plaintiff's physical therapist whose treatment records provide that" a cane was fitted and given to the patient. Dkt. 11 at 23. The Commissioner argues the ALJ sufficiently explained why Dr. Lewis' opinion was unsupported and inconsistent and therefore unpersuasive. Dkt. 13 at 3.

Dr. Lewis opined that Plaintiff can stand and walk for less than two hours per day and that Plaintiff can sit less than two hours per day with both limitations due to "lumbar degenerative disc disease … decreased balance, need for a cane, decreased range of motion for the back, positive straight leg raising and antalgic [gait]." AR 607. Dr. Lewis reported that Plaintiff "can lift and carry less than 10 pounds" due to the same limitations. *Id.* The report concludes that Plaintiff requires a medically necessary cane for use on all distances and terrains. *Id.*

Regarding consistency, the ALJ found that Dr. Lewis' opinion on the medically necessary use of a cane was inconsistent "given that the majority of the time she was observed to have a normal gait and no use of the cane." AR 34. During a physical therapy session in November 2021, Plaintiff was provided a cane after demonstrating an antalgic gait. AR 33 (citing AR 545). But the ALJ notes that, in contrast to Dr. Lewis' opinion, multiple appointments before *and after* the providing of a cane recorded Plaintiff having a "normal" gait. *Compare* AR 606 (Dr. Lewis' exam reporting Plaintiff "cannot do tandem or toe-heel walking") *with* AR 508 (acupuncture treatment progress note "GAIT: Normal") *and* AR 692 (office visit with another doctor showing normal gait). Such conflicting evidence can support an ALJ's finding discrediting the purported medical necessity of an ambulatory device. *Luis G. v. Saul*, No. 19-cv-00317-DFM, 2020 WL 1433589, at *4 (C.D. Cal. Mar. 24, 2020) ("The fact that a cane was sometimes documented in the record was not enough to establish its medical necessity."). Similarly, the ALJ highlighted that Dr. Lewis' finding of decreased lumbar flexion was inconsistent where plaintiff was "noted to have full range of motion of the musculoskeletal system" from various medical reports. AR 32 (citing AR 328, 331, 557). Thus, the conflicting medical reports from Dr. Pierce and the

6

acupuncture treatment provided substantial support for the ALJ's decision to find Dr. Lewis' medical opinion unpersuasive. Indeed, if "the evidence is susceptible to more than one rational interpretation," this Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Rounds*, 807 F.3d at 1002.

Regarding supportability, the ALJ determined Dr. Lewis' opinion was not supportable because "the imaging studies show moderate findings at worst with no indication of herniation." AR 34. The Commissioner also points to the ALJ's explanation that there was only "slight[] loss of lower extremity muscle strength" in Dr. Lewis' findings. Dkt. 13 at 4 (citing AR 34, 607) (arguing that Dr. Lewis' concurrent findings were that Plaintiff had "only slightly reduced strength of four out of five in the lower extremities" and "full five out of five upper extremity strength…."). Here again, there is conflicting evidence in the record, more than a scintilla of which supports the ALJ's decision. Thus, "the evidence is susceptible to more than one rational interpretation" and this Court "must uphold the ALJ's findings." *Rounds*, 807 F.3d at 1002.

In view of this record, the ALJ properly assessed the available medical evidence in considering the supportability and consistency of Dr. Lewis' opinion. While there is some evidence supporting opposite conclusions, this Court finds there was substantial evidence from which the ALJ adequately explained his discounting of Dr. Lewis' opinions. Accordingly, the ALJ did not err.

**B.    Issue Two: The ALJ's Determination of Residual Functional Capacity was Supported by Substantial Evidence**

Plaintiff further argues that, because "the ALJ failed to properly consider the opinion evidence proffered by the consultative examiners," the ALJ failed to "create a narrative bridge between said evidence and the ALJ's crafted RFC," requiring remand. Dkt. 11 at 17, 22. However, because the Court finds that the ALJ did not err in discounting the medical opinion of Dr. Lewis or discounting-in-part the medical opinion of Dr. Crockett, the Court does not find error in the ALJ's determination of Plaintiff's RFC.

////

////

**C.     Issue Three: The ALJ's Determination that Plaintiff Could Perform a Significant Number of Jobs in the National Economy Was Supported by Substantial Evidence.**

Finally, Plaintiff contends that "if the ALJ had properly credited the findings of the consultative examiners then a finding of disability would have been directed based on the testimony of the vocational expert." Dkt 11. at 24-25.  This argument relies on the premise the ALJ erred in determining the RFC, which in turn relies on the argument that the ALJ improperly discounted the consultative examiners' opinions.  Because the Court determines the ALJ did not err in addressing the medical opinion evidence and thus did not err in determining the RFC, Plaintiff's argument fails at this step.  The ALJ reasonably determined at step five, based on the testimony of the vocational expert and "considering the [Plaintiff's] age, education, work experience, and residual functional capacity, the [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and therefore Plaintiff is not disabled.  AR 37.

**V.     CONCLUSION**

For the reasons above, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED.**

Dated: July 14, 2025

SUSAN VAN KEULEN
United States Magistrate Judge

8